THE PEOPLE OF THE STATE OF NEW YORK ex rel. NEW YORK CENTRAL RAILROAD COMPANY, Relator, *v.* PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, SECOND DISTRICT, and CHARLES B. HILL and Others, as Public Service Commissioners of the State of New York, Being Members of Said Commission, Second District, Respondents.

Third Department, February 28, 1921.

Railroads — jurisdiction of Public Service Commission to compel reconstruction of switch between railroads — Federal Transportation Act of 1920 not applicable — necessity and convenience — findings of Commission will not be disturbed.

The Public Service Commission, by virtue of section 35 of the Public Service Commissions Law, as amended by chapter 637 of the Laws of 1920, had jurisdiction of proceedings to compel the New York Central Railroad Company and the Lehigh Valley Railroad Company to reconstruct a switch connecting their lines at Batavia; the Federal Transportation Act of 1920 does not apply.

The evidence fully establishes the necessity and convenience for the reconstruction of said switch.

The findings of the Public Service Commission will not be disturbed except where said findings, if made by a jury, would be set aside as against the weight of the evidence.

CERTIORARI issued out of the Supreme Court and attested November 22, 1920, directed to the Public Service Commission of the State of New York, Second District, and others, commanding them to certify and return to the office of the clerk of the county of Albany all and singular their proceedings

had in directing the New York Central Railroad Company and the Lehigh Valley Railroad Company to complete a switch between the two railroads in the city of Batavia.

*Locke, Babcock, Spratt & Hollister* [*Maurice C. Spratt* of counsel], for the relator.

*Ledyard P. Hale* of counsel, for the respondent.

KILEY, J.:

Batavia is a city of about 14,000 inhabitants situate in Genesee county. The Erie railroad and the New York Central railroad, with its Canandaigua branch, run east and west through the northern part of the city, and the Lehigh Valley railroad runs east and west-south through the southern part of the city and about one mile from the center of said city. The New York Central and its Canadaigua branch and the Erie Railroad Company have switching facilities at Batavia, by which interchange between the tracks of these roads is made. The New York Central railroad is south of the Erie railroad. In 1891 the Lehigh Valley railroad connected with the Central at Batavia by means of a curved switch of about one-half mile in length, through said city at a point where most of the industrial plants in said city are situate. In 1895 or 1896 this switch, for about 100 feet south of the Central, and the nearest end to the Central, was abandoned, and the rails for that length taken up; the reason given in the record is that the Lehigh Valley Railroad Company had acquired other connections or facilities at Depew Junction or the Tonawandas. There is now a private switch between the two systems in the city of Batavia, but can only be used by permission of the private owner; it runs close to the plant of the party owning it and complaint is made of the inconvenience and hazard created by reason thereof. Geneva lies about sixty-five miles east of Batavia, and Buffalo or Gardenville lies about thirty-five miles west of Batavia. The New York Central and Lehigh Valley parallel each other between those two points. In June, 1920, the complaint or petition of the Batavia Chamber of Commerce, Inc., of Batavia was filed with the Public Service Commission, Second District, for an order requiring the Lehigh Valley Railroad Company

and the New York Central Railroad Company to reconstruct and put in operation the portion of said switch so abandoned as aforesaid; the basis for the complaint was the inconvenience caused the business interests of said city by the absence of said switch, and the inconvenience that would be had to said business interests by its reconstruction. The answer of the Lehigh Valley Railroad Company denies that it had violated any section of the Public Service Commissions Law, and that the Public Service Commission did not have jurisdiction to make the order prayed for. The New York Central answered to the same effect, alleging that sole jurisdiction of the subject-matter was conferred upon the Interstate Commerce Commission by the Transportation Act of 1920; and denied the convenience and practical value of the reconstruction of that end of the switch. Hearings were had before the Commission, and on or about October 5, 1920, an order was made directing the relief asked for by the Batavia Chamber of Commerce. The New York Central Railroad Company procured a writ to review the proceedings had before the Public Service Commission in this court. The Batavia Chamber of Commerce aforesaid in January, 1919, instituted similar proceedings. It was held in those proceedings that the Public Service Commission did not have jurisdiction to grant the relief asked for. After the termination of the last-mentioned proceedings and before the commencement of these proceedings the Public Service Commissions Law, section 35, was amended (Laws of 1920, chap. 637, effectual May 10, 1920) authorizing the Public Service Commission to take jurisdiction of situations such as the one under consideration here. As to the Transportation Act of 1920, subdivisions 18 to 21, inclusive, of section 1 of the Interstate Commerce Act (24 U. S. Stat. at Large, 379), as amended by section 402 of the Transportation Act of 1920 (41 id. 477, 478), give the Interstate Commerce Commission control over the extension of a line of railroad, the construction of a new line of railroad, and the operation of the extension or new line; that means, of course, when their operation, in whole or in part, is interstate. But subdivision 22 of said section 1, as amended by said section 402 of the Transportation Act of 1920, provides that such authority, so conferred, subdivisions 18 to 21, inclusive, "shall

not extend to the construction or abandonment of spur, industrial, team, switching or side tracks, located or to be located wholly within one State," etc. The abandonment made here was of a switch or a portion of a switch, and the reconstruction sought here is of a switch or a portion of a switch. The Public Service Commission, Second District, of this State had jurisdiction to make the order. As to necessity and convenience, the record is replete with evidence of inconvenience, because of the absence of that switch. There are sections of the country that can be served through the Lehigh Valley much more conveniently and expeditiously than by the New York Central or the Erie. The Lehigh Valley can make connections in New York city that cannot be made over the New York Central. The Lehigh Valley has a through billing arrangement over the Grand Trunk into Canada that is more convenient than either of the other roads. If a car comes over the Lehigh Valley that should have come over the Central, or *vice versa*, it has to be returned to Buffalo or Geneva to get it back to the right station in Batavia, unless it is hauled by truck or wagon, or put over this private switch. The relator says there are not many such instances; the record discloses a good many; why should there be any? Something was said upon the argument about danger attendant on the operation of this switch. There is a switch and switching going on continuously now between the main line Central, the Canandaigua branch, and the Erie, and over this private switch. The expense is another item urged why this order should be set aside. The Central should not be permitted to tie a community hand and foot because of any item of expense of the amount honestly involved here. The Lehigh Valley is not here complaining. The basis of the Central's opposition is obvious. We cannot disturb the finding of this Commission unless it would be set aside by a court, after a trial by jury in an action triable by a jury, as against the weight of evidence. (Code Civ. Proc. § 2140.)

The finding is amply supported by the evidence, and the order should be affirmed, with costs.

Determination unanimously confirmed, with fifty dollars costs and disbursements.