Day, J.
 

 The principal questions involved in this proceeding in error to reverse the order of the Ohio Public Utilities Commission are:
 

 First. Did the Public Utilities Commission have jurisdiction?
 

 'Second. If it did have jurisdiction, was the same superseded by paragraph 9, Section 1 of the Interstate Commerce Act?
 

 Third. Does the order of the Public Utilities Commission amount to a confiscation of the property of the railroad company without a reasonable or adequate compensation?
 

 As to the general jurisdiction of the Public Utilities Commission over railroads and common car
 
 *72
 
 riers the General Code of Ohio has made several broad grants of power. The following, sections indicate that purpose on the part of the Legislature: Section 614-3, General Code:
 

 “The Public Service Commission of Ohio is hereby vested with the power and jurisdiction to supervise and regulate ‘public utilities’ and ‘railroads’ as herein defined and provided and to require all public utilities to furnish their products and render all services required by the Commission, or by law.”
 

 Section 614-4, General Code:
 

 “The jurisdiction, supervision, powers and duties of the Public Service Commission .shall extend to every public utility and railroad, the plant or property of which lies wholly within this state and when the property of a public utility or railroad lies partly within and partly without this state to that part of such plant or property which lies within this state, and to the persons or companies owning, leasing or operating the .same, and to the records and accounts of the business thereof done within this state.”
 

 Section 502, General Code:
 

 “This chapter shall apply to the transportation of passengers and property between points within this state, to the receiving, .switching, delivering, storing and handling ■ of such property. * * * In addition thereto the provisions of this act shall apply to the regulation of any and all other duties, services, practices and charges, of the railroad company, incident to the shipping and receiving of freight, which are proper subjects of regulation, excepting only, that they shall not apply to the
 
 *73
 
 regulation, of commerce with foreign nations, and among the several states, and with the Indian tribes. ’ ’
 

 These and other sections bearing upon the question of furnishing adequate service and facilities as to depots, switches, side tracks, control over private tracks, rates and regulation thereof, unlawful preferences, might be cited, all of which, when taken together, indicate the wide jurisdiction and authority given the Public Utilities Commission in regulating and controlling intrastate commerce. We are therefore of opinion that, unless that jurisdiction has been superseded, the Public Utilities Commission had jurisdiction to make the order in question.
 

 This brings us to the consideration of the second ground of error, and that is: Has the Transportation Act, known as paragraph 9, Section 1, of the Interstate Commerce Act (41 Stats, at L., 456; Section 7884, paragraph 9, Barnes’ Fed. Code, 1921, Supp; U. S. Comp. St., Section 8563, taken away the right of the state to control purely intrastate commerce? So much of the act referred to as may be pertinent here reads as follows:
 

 “Any common carrier subject to the provisions of this act, upon application * * * of any shipper tendering interstate traffic for transportation, shall construct, maintain, and operate upon reasonable terms a switch connection with any * * * private side track which may be constructed to connect with its railroad, where such connection is reasonably practicable and can be put in with safety and will furnish sufficient business to justify the construction and maintenance of the same.”
 

 
 *74
 
 This, it is readily seen, applies to one tendering interstate traffic. While plaintiff in error is a steam railroad eng'aged in interstate and intrastate commerce, the record shows that all the traffic that will result from this switch is to be purely intrastate.
 

 At no place in the record is there any affirmative showing that the installation of this switch will affect interstate commerce. While plaintiff in error is a steam railroad engaged in interstate commerce, we think that the claim that its car supply available for interstate commerce would be affected by this switch is not so well sustained as to justify us in denying, upon this ground, the jurisdiction of the Public Utilities Commission.
 

 We are not unmindful, however, of the doctrine ■that when interstate or foreign commerce is involved Congress by appropriate legislation may prescribe the final rule, even though intrastate commerce is affected thereby. Yet until interstate or foreign commerce is in some way involved, we are of opinion that the state may, within its own borders, control commerce originating and terminating within the state.
 

 Entertaining this view, we think the authorities cited do not avail, for the reason that interstate or foreign commerce is not shown by the record to be involved in the premises.
 

 Again, has not Congress recognized this distinction by its reference to intrastate freight service? Paragraph 17, Section 1, of the Interstate Commerce Act (41 Stats, at L., 456; Section 7884, paragraph 17, Barnes’ Fed. Code), is as follows:
 

 “Provided, however, That nothing in this Act
 
 *75
 
 shall impair or affect the right of a state, in the exercise of its police power, to require just and reasonable freight and passenger service for intrastate business, except in so far as such requirement is inconsistent with any lawful order of the Commission made under the provisions of this act.”
 

 We must therefore deny that paragraph 9, Section 1, of the Interstate Commerce Act, has deprived the Public Utilities Commission of its jurisdiction, for the reason that it does not appear that interstate commerce is affected by the order.
 

 The remaining ground of error is that the order of the Commission amounts to “a confiscation of the property of the railroad company without a reasonable or adequate compensation,” and is contrary to the practice of the Commission in other cases.
 

 In so far as the last point is concerned, we have examined the authorities cited and find nothing therein inconsistent with the order granted, it being borne in mind that these mines are already in operation and producing coal.
 

 We have some doubts, however, about the public necessity of this order. The amount of business furnished the railroad company by this switch will not be great, but at the same time, the expense incident thereto is not great, as all the plaintiff in error is required to do is to “provide and install the necessary frog and one rail length of track for said side track,” all other expense to be borne by the complainant E. D. Purdy. The demand upon plaintiff in error’s supply of coal ears is so. sKght as to be negligible. The market to be supplied seems to be local in character, and the pub-
 
 *76
 
 lie is interested, at least in some degree, by the supply for municipal plants, for which applicant has two contracts.
 

 After hearing the testimony, the Public Utilities Commission, upon full consideration, found “that the construction and maintenance of said switch track is reasonably required and necessary to enable the defendant to provide and maintain an adequate and efficient intrastate transportation service in the state of Ohio,” and, while the public necessity of such a switch might be questioned, the Commission having thus found, we cannot say, in the light of the discretion that must necessarily be vested in such a commission, that the order is so manifestly against the weight of the evidence as to warrant us in disturbing the same.
 

 The order is therefore affirmed.
 

 Order affirmed.
 

 Marshall, C. J., Robinson, Jones, Matthias and Allen, JJ., concur.