Day, J.
 

 While a connection between the railroads is the avowed object of the proceeding, this record discloses that the true purpose of this controversy is the desire to share in the coal car supply of the New York Central Railroad. The applicant railroad company, in its 60 miles of length, has at least six other connections.
 

 The complainant railroad and coal companies, together with others, in order to attain their purpose, made application to the Interstate Commerce Commission for a physical connection between plaintiff in error’s railroad at Hopedale, Ohio, and the lines of the Pittsburgh
 
 &
 
 West Virginia; both are steam railroads engaged in interstate and intrastate commerce. While the case was still pending, application was made by the Pittsburgh
 
 &
 
 
 *108
 
 West 'Virginia Railroad Company, and six of the coal companies, parties to the proceeding before the Interstate Commerce Commission, to the Public Utilities Commission of Ohio for exactly the same connection, for the purpose of intrastate traffic. Having secured a favorable order from the latter application, may the conclusions of the Interstate Commerce Commission afterward reached be ignored because they were adverse to the complainants? In other words, is there any difference between the car supply of the New York Central lines secured by way of intrastate commerce and the car supply secured by the route of interstate commerce?
 

 A solution of the problem requires the consideration of the close inter-relationship of interstate and intrastate commerce. The record is made up both of matters transpiring before the Public Utilities Commission of Ohio and those that took place before the Interstate Commerce Commission. It is self-evident that this connection once made will be equally available for interstate and intrastate commerce and the connection, even though installed under the Ohio Public Utilities Commission order, is bound to affect interstate traffic.
 

 . The Interstate Commerce Commission, as far as the connection was concerned, refused the same, and found that there were other connections, five in Pennsylvania and two in Ohio, one only 2.5 miles west of Hopedale, now enjoyed by the applicant company; that as a steam railroad, engaged in interstate and intrastate commerce, the New York Central was now engaged up to capacity; that to take on new business would entail an expendi
 
 *109
 
 ture of money for betterments, aggregating many thousands of dollars; that the effect on other shippers of the New York Central lines, now dependent thereon for ears, would be detrimental, thereby affecting interstate commerce as well as intrastate traffic.
 

 It is conceded that the Interstate Commerce Commission had full jurisdiction, by virtue of paragraph 3, Section 3, of the Interstate Commerce Act, as amended by the Transportation Act of February, 1920 (41 Stats, at L., 479; Section 7886, par. 3, Barnes’ Fed. Code), to order the physical connection between these two railroads, both engaged in interstate and intrastate commerce. But, having that jurisdiction, the question then arises whether the exercise of its control over interstate commerce, if intrastate commerce is affected thereby, renders the jurisdiction of the Interstate Commerce Commission exclusive in the premises.
 

 In purely intrastate traffic by shippers within the state, between points in the state, the Ohio Public Utilities Commission has exclusive jurisdiction when interstate commerce or foreign commerce is not involved. So the single question for determination here must be: When the jurisdiction of the Interstate Commerce Commission has been invoked in the interest of interstate commerce, how far will that jurisdiction extend over intrastate commerce in determining what is necessary for interstate or foreign commerce and traffic?
 

 We think this question has been answered by the Supreme Court of the United States in
 
 State of Texas
 
 v.
 
 Eastern Texas Rd. Co.,
 
 258 U. S., 204, 217, 42 Sup. Ct., 281, 283 (66 L. Ed., 566). Mr.
 
 *110
 
 Justice Van Devauter, referring to the Transportation Act of 1920, uses this language:
 

 “Being amendments of the Interstate Commerce Act they are to be read in connection with it and with other amendments of it. As a whole these acts show that what is intended is to regulate interstate and foreign commerce and to affect intrastate commerce
 
 only
 
 as that may be incidental to the effective regulation and protection of commerce of the other class. They contain many manifestations of a continuing purpose to refrain from any regulation of intrastate commerce, save such as is involved in the rightful exertion of the power of Congress over interstate and foreign commerce.” To the same effect is
 
 Houston, East & West Texas Ry. Co.
 
 v.
 
 United States,
 
 234 U. S., 342, 350, 34 Sup. Ct., 833, 836 (58 L. Ed., 1341):
 

 “It is unnecessary to repeat what has frequently been said by this court with respect to the complete and paramount character of the power confided to Congress to regulate commerce among the several states. It is of the essence of this power that, where it exists, it dominates.. * * * Wherever the interstate and intrastate transactions of carriers are so related that the government of the one involves the control of the other, it is Congress, and not the state, that is entitled to prescribe the final and dominant rule, for otherwise Congress would be denied the exercise of its constitutional authority, and the state, and not the nation, would be supreme within the national field.”
 

 In
 
 Minnesota Rate Cases,
 
 230 U. S., 352, at page 399, 33 Sup. Ct., 729, at page 739 (57 L. Ed., 1511, 48 L. R. A. [N. S.], 1151, Ann. Cas., 1916A, 18), the court said:
 

 
 *111
 
 “The authority of Congress extends to every part of interstate commerce, and to every instrumentality or agency by which it is carried on; and the full control by Congress over the subjects committed to its regulation is not to be denied or thwarted by the commingling of interstate and intrastate operations. This is not to say that the nation may deal with the internal concerns of the state, as such, but that the execution by Congress :of its constitutional power to regulate interstate commerce is not limited by the fact that intrastate transactions may have become so interwoven therewith that the effective government of the former incidentally controls the latter. This conclusion necessarily results from the supremacy of the national power within its appointed sphere.”
 

 Also to the same effect is
 
 Atchison, T. & S. F. Ry. Co.
 
 v.
 
 Rd. Comm,
 
 (Cal. Sup.), 211 Pac., 460, where the main question involved and discussed was whether or not the Railroad Commission of California had the power to order three separate railroad companies, whose lines entered Los Angeles, each of which was engaged in both classes of commerce, to establish a union terminal depot within a certain defined area. The court in an exceedingly elaborate and able opinion unanimously held that in view of the Transportation Act of 1920 the power did not exist. It was held that in the matter of the extension of railroad facilities, not only is the Interstate Commerce Commission empowered to act on the subject, but that Congress has expressly prohibited the railroad companies from acting without the consent of the Interstate Commerce Commission, under penalty. This case
 
 *112
 
 was affirmed by the Supreme Court of the United States, April 7, 1924, 264 U. S., —, U. S. Adv. Ops., 1923-24, page 455.
 

 The Court of Appeals of New York has recognized the exclusive character of this jurisdiction in the case of
 
 People of State of New York, ex rel. New York Central Rd. Co.,
 
 v.
 
 Public Service Commission,
 
 233 N. Y., 113, 135 N. E., 195, 22 A. L. R., 1073, in which it was held that the Public Service Commission of that state had no authority to make an order directing two railroad companies engaged in interstate and intrastate commerce, whose lines ran through the city of Batavia, to install a connecting line; that both of the railroads in question being engaged in interstate and intrastate commerce, the relief sought could be granted only by the federal Interstate Commerce Commission, in compliance with the Interstate Commerce Act, Section 3, paragraph 3, as amended by the Transportation Act of 1920.
 

 It is contended that the contrary view has been held by the Supreme Court of Wisconsin in
 
 Chicago, St. Paul, Minneapolis & Omaha Ry. Co.
 
 v.
 
 Railroad Commission of Wisconsin,
 
 178 Wis., 293, 189 N. W., 150.
 

 Referring to the decision of the Court of Appeals in this last-named case, the Supreme Court of Wisconsin, at page 279 of 178 Wis., at page 152 of 189 N. W., uses this language:
 

 “The Court of Appeals reversed the order of the Public Service Commission requiring a connection, on two grounds: First * * * and second, because Congress by the passage of the Transportation Act of 1920 * * * so amended the second paragraph of Section 3 of the Interstate Com
 
 *113
 
 merce Act as to give the Interstate Commerce Commission jurisdiction of connecting tracks, and by so doing took away the right of a state commission to act upon the subject. The latter reason, even if conceded to be a valid one where it applies, and upon that subject we express no opinion, does not affect this case because the proceedings were begun and the order made before the passage of the federal act.”
 

 But conceding that the Wisconsin case denies the exclusive character of the jurisdiction conferred by paragraph 3, Section 3, of the Interstate Commerce Act, yet it, and also the New York and California cases, are to be distinguished from the case at bar, for the reason that in none of them had the affirmative jurisdiction of the Interstate Commerce Commission been first invoked by the applicants.
 

 We are confronted with the situation where, a jurisdiction voluntarily invoked having been exercised, its effect cannot be denied.
 

 In the application before the federal Commission it was car supply for interstate commerce that was the object of attainment. In the application before the Ohio Public Utilities Commission it is car supply for intrastate traffic that is desired. Car supply for interstate traffic was denied not only because of other connections, but also because of
 
 the effect upon the interstate carrier, the New York Central Railroad Company, as to cars available for its shippers, and for the further reason of the great expense incident to the new demand upon its service, claimed to amount to over $2,000,000.
 
 Two of these grounds will be affected by intrastate traf •
 
 *114
 
 fic the same as by interstate traffic, to-wit, the expense of the construction and the taking of car supply from a road already working up to capacity, and the result to shippers in both interstate and intrastate traffic now dependent on the New York Central Railroad for car supply, will be detrimental. Thus, the conclusion of the Interstate Commerce Commission involves not only interstate traffic, but intrastate traffic as well. That being so, its jurisdiction must be exclusive in the premises.
 

 It is self-evident that this connection once made is equally available for interstate as well as intrastate commerce. The same connection is asked for before the Interstate Commerce Commission, and though granted by the Ohio Public Utilities Commission, in so far as intrastate traffic is concerned, its use for interstate commerce is at once available so far as the physical connection is concerned. The record discloses, as above indicated, that to take care of this additional burden an expenditure of a large sum of money by plaintiffs in error will be necessary in the way of additional facilities, double tracking, etc., and that this new demand upon the cars, tracks, terminals, and transportation facilities affects detrimentally other shippers upon the Lake Erie, Alliance & Wheeling and New York Central Railroad lines, now dependent for cars and transportation upon said roads now burdened to capacity.
 

 There is nothing in this record by which we can say that these applicant companies are going to cease engaging in interstate commerce and confine themselves solely to intrastate traffic. In fact, the contrary rather appears, and so long as they con
 
 *115
 
 tinue to engage in both species of traffic they are bound by the jurisdiction that they themselves invoked ; said jurisdiction having power to affect both interstate and intrastate traffic by its orders as indicated above.
 

 As is said in the majority opinion of the Interstate Commerce Commission:
 

 “If we assume that there will be a movement via Hopedale connection to the extent of complainants’ estimates, it appears that the additional business which the New York Central would receive would not be commensurate with the additional expenditures that it would have to make in order to handle such business and
 
 at the same time afford adequate service to the shippers located on its Une and dependent upon it for transportation.
 
 In either event it is our opinion that the record does not warrant a requirement that the connection sought be established, and it follows that the complaint must be dismissed.”
 

 Applying this doctrine to the instant case, it is apparent that a majority of the Interstate Commerce Commission were of the opinion that this connection should not be made, for the reason that interstate commerce was best subserved by denying it; that its effect will be detrimental to the interest of other shippers now dependent upon the New York Central Railroad for their requirements in interstate and intrastate traffic and commerce. The affirmative jurisdiction of the federal Commission having been invoked by the applicant companies, and the Interstate Commerce Commission having denied the connection in question, intrastate commerce, in so far as it is incidentally affected
 
 *116
 
 thereby, must yield thereto in the interest of interstate commerce, and to that extent the jurisdiction of the Interstate Commerce Commission was exclusive in the premises.
 

 We think the principle announced in 15 Corpus Juris, 1134, is- applicable in the present instance:
 

 “Where two actions between the same parties, on the same subject, and to test the same rights, are brought in different courts having concurrent jurisdiction, the court which first acquires jurisdiction, its power being adequate to the administration of complete justice, retains its jurisdiction and may dispose of the whole controversy, and no court of co-ordinate power is at liberty to interfere with its action.”
 

 It is quite true that it is argued that there are two causes of action, separate and distinct, one involving interstate commerce and the other involving intrastate commerce. A cause of action is a right which one has to redress a wrong or to assert a right. The cause of action, however, must not be confused with the remedy, and a full examination of the records before the respective commissions cannot help but lead to the conclusion that the true cause of action is the desire to share in the privilege of the coal car supply of the New York Central Railroad, and that the remedy to secure that right was sought both by way of interstate and intrastate commerce. It was in reality but one cause of action.
 

 Our attention is called to the cases of
 
 Akron & Barberton Belt Rd. Co.
 
 v.
 
 Public Utilities Commission,
 
 105 Ohio St., 553, 138 N. E., 74, and
 
 Hocking Valley Ry. Co.
 
 v.
 
 Public Utilities Commission,
 
 107
 
 *117
 
 Ohio St., 43, 140 N. E., 667. The former recognizes the principle that the .state commission has jurisdiction over intrastate commerce and may regulate the same by fixing rates between points in the state, so long as its orders do not result in discrimination .against interstate commerce. The
 
 Hocking Valley Railway case
 
 dealt with the power of the Public Utilities Commission to require a steam railroad company to connect its tracks with an interurban railroad, and no questions involving interstate commerce were presented by the record. We find nothing in either case inconsistent with the conclusion reached in the instant case, and the
 
 Akron & Barberton Belt Railroad case
 
 is rather in support of the conclusions reached herein than otherwise.
 

 The federal jurisdiction contained in paragraph 3, Section 3, Transportation Act, having been invoked by the applicant companies they must accept the results thereof. This jurisdiction having first attached, and being exclusive in character,
 
 in so far as above indicated,
 
 it follows that the Public Utilities Commission was in error in retaining jurisdiction in the premises, and its order must therefore be reversed.
 

 Order reversed.
 

 Marshall, C. J., Robinson, Jones and Matthias, JJ., concur.