FRANK MILHOLLAN et al., Respondents, v. GREAT NORTH-
    ERN RAILWAY COMPANY, a Corporation, and Minneapolis,
    St. Paul & Sault Ste. Marie Railway Company, a Corporation,
    Appellants.

(204 N. W. 994.)

**Railroads — railroad commissioners' authority to compel train connections
of competing lines stated.**

1. Under §§ 4777 and 4779, Comp. Laws, 1913, the Railroad Commissioners of the state have authority to compel train connections of competing lines when they are within one half mile of any common point, when such connection does not place a burden on interstate commerce.

**Commerce — Federal Transportation Act held not to impair or affect right
of state to require just and reasonable freight and passenger service
for intrastate business except as to regulations inconsistent with lawful
order of Interstate Commerce Commission.**

2. The Federal Transportation Act of Feb. 28, 1920, does not affect intrastate commerce only as incidental to the effect of regulation of interstate and foreign commerce, and specifically reserves to the state the power to compel the construction of spurs, switching or side tracks, located or to be located wholly within one state, and nothing in said act impairs or affects the right of the state in the exercise of its police power to require just and reasonable freight and passenger service for intrastate business, except so far as such regulations are inconsistent with any lawful order of the Interstate Commerce Commission.

**Constitutional law — order requiring connections between railroads sus-
tained by evidence; does not take property without due process of law;
not deprivation of equal protection of law.**

3. The evidence in this case sustains the findings, conclusions and order of

Note.— (2) Power of state to require interstate carrier to make track connections with other roads, see annotation in 22 A.L.R. 1078.

the Railroad Commissioners, and the findings, conclusions, order and judgment of the district court, it appearing therefrom that the building of the connecting line will not be an unreasonable burden upon interstate commerce, nor does it take property without due process of law or deprive any one of the equal protection of the law.

Opinion filed August 4, 1925.

Commerce, 12 C. J. § 10 p. 12 n. 63, 64.   Constitutional Law, 12 C. J. § 908 p. 1168 n. 54; § 1072 p. 1269 n. 46; p. 1270 n. 62 New.   Railroads, 33 Cyc. p. 124 n. 32 New.

Appeal from the judgment of the District Court of Burleigh County, *Jansonius*, J.

Affirmed.

*Newton, Dullam & Young* and *Murphy & Toner*, for appellants.

An order of a railroad commission requiring a railway company to expend money and use its property in a specified manner is not a mere administrative order but is a taking of property; to be valid there must be more than mere notice and an opportunity to be heard; the order itself must be justified by public necessity and not unreasonable or arbitrary.

A state acting through an administrative body may require railroad companies to make track connections but such body cannot compel a company to build branch lines, connect roads lying at a distance from each other or make connections at every point regardless of necessity; each case depends on the special circumstances involved.

In a proceeding brought to compel a carrier to furnish facilities not included in its absolute duties the question of expense is of controlling importance.   Washington v. Fairchild, 224 U. S. 510.

In determining what the legislative intent was in passing a law that was ambiguous in its terms the journals of the legislature may be read in order to correctly ascertain such intention.   State v. Burr, 16 N. D. 581.

*Geo. F. Shafer*, Attorney General, and *John Thorpe*, Assistant Attorney General, for respondents.

BURKE, J.   On November 17, 1922, the residents of the towns of

Ambrose, Fortuna and Colgan, all in the county of Divide, in the State of North Dakota, petitioned the Board of Railroad Commissioners to take immediate steps to have the Great Northern Railway, and the Minneapolis, St. Paul & Sault Ste. Marie, hereinafter called the Soo Railway, make physical connections at Crosby, North Dakota, the said railroads being less than a half mile apart at the city of Crosby, and alleging as a reason for such connection that the people living in the said towns were unable to get a supply of North Dakota lignite coal, and that all of the lignite coal mines are located on the Great Northern branch from Berthold to Crosby; that winter was approaching and the situation would be remedied by having the connection of the two roads effected at the town of Crosby.  The Great Northern answered the petition, denying it would be any saving or advantage to the people of the communities, or any public advantage, and alleged that the Great Northern and the Minneapolis, St. Paul & Sault Ste. Marie Railway Companies already had transfer tracks and connections sufficient and adequate for all needs; that there would be little, if any, traffic transferred, and the revenue on the traffic would not be sufficient to justify construction of a transfer track.  The Great Northern further alleges that the Board of Railroad Commissioners is without jurisdiction to hear the petition or enter the order requiring the construction of such track transfer.  The Soo Railway answered that the lignite shortage was quite general over the state due to eastern coal shortage, and that under normal conditions the petitioners were adequately served and that the expense of constructing the connection track sought would be wholly disproportionate to any public benefit that might be derived therefrom.

On the 24th day of April, 1923, a hearing was had at which all parties were present and the testimony for, and on behalf, of the petitioners, and for, and on behalf, of the railroad companies was duly taken, transcribed, and upon which the Board of Railroad Commissioners made findings of fact and conclusions, in effect that the transfer facilities at Crosby, prayed for in the petition are necessary and expedient and duly ordered the building of such transfer track as prayed for.

The matter was taken by stipulation, on appeal, to the district court of Burleigh county, and the judge of said court, upon the hearing of

said, appeal, sustained the findings and conclusions and order of the Railroad Commissioners, and ordered judgment in accordance therewith. Judgment was duly entered and the defendant railroad companies have appealed to this court.

Appellants are engaged in interstate and intrastate commerce in the state of North Dakota. Their main lines cross at the city of Minot where they have transfer connections, one hundred and thirteen miles from Crosby, by way of the Soo line, and one hundred and eleven miles by the Great Northern. The main line of the Soo runs in a northwesterly direction from Minot, to the town of Flaxton, from which the Soo has a branch line extending west, 41 miles, to Crosby, and thence through the towns of Ambrose, Fortuna, Colgan, and Alkabo, and thence into Montana. The Great Northern runs west from Minot, and at the town of Berthold on the main line, there is a branch line extending to Crosby, 89 miles. Lignite coal is extensively mined in the territory immediately south of the Great Northern Railway track near Lignite, Noonan, Larson, Kinkade and Stampede, all towns on the Great Northern branch and naturally the coal is loaded on the Great Northern cars, a goodly portion at the mines. The Great Northern branch line ends at Crosby, while the road on the Soo branch extends to Ambrose, Fortuna, Colgan, and Alkabo, and on into Montana. Between Flaxton and Crosby, the two branch lines run parallel and are not more than two miles apart the most of the way. South of the Great Northern track there are large mines known as the Truax and Whittier Crockett mines, which have their own spurs which connect with the Great Northern branch, and the coal is loaded on the car at the mine and then run out over the Great Northern Railway, and if the connection is made at Crosby, as prayed for, the towns west of Crosby can be supplied with coal clear to Montana.

The Great Northern Railroad from Lignite to Crosby is on the south edge of a gumbo flat. The Soo road runs through the middle of the flat and during the wet season the roads from the coal mines south of the Great Northern, across the Great Northern and the gumbo flat, are impossible. The county of Divide, of which Crosby is the county seat, is well settled and is a fine farming country, especially adapted to the growing of wheat, and the small grains, potatoes, and general diversified farming. Being a prairie country, there is no wood and no fuel, except as it is shipped in from the coal fields along the Great Northern,

or from Duluth or Superior. It is not so much a question of the cost of the fuel as it is the absolute necessity for it. It is a matter of common knowledge, of which this court takes judicial notice, that the county of Divide, in the northwest corner of North Dakota, has no timber. The evidence shows that there never has been a time since the opening up of the country that they have had enough coal. Farmers have come to town in the winter for coal and have gone home without it. Around Ambrose they have gone to Crosby, a distance of 12 miles; west they have gone into Montana, as far as 25 miles to get their fuel. There are millions of tons of coal in close proximity which could be had if this connection is made, as prayed for. Ambrose is 12 miles west of Crosby; Colgan, 7 miles west of Ambrose; Fortuna, 10 miles west of Colgan, and Alkabo, 10 miles west of Fortuna. The county adjacent is all settled up by farmers and they have no way of getting in fuel except as it is shipped in, over the Soo line of railroad, as that is the only line west of Crosby.

Appellants claim that the connection at Minot is sufficient. The distance by Minot is 216 miles, and by the proposed connection is 18.5 miles, a saving of 197.5 miles, and 97 cents per ton.

Appellants specify as error the insufficiency of the evidence and findings to support the order of the commission and the judgment of the court. First: The commission erred in each and all of its findings and conclusions and its order because they are not supported by the evidence; Second: In addition to the foregoing, that the judgment of the court is erroneous in the same particulars; Third: That the findings, conclusions and order of the commission are against the law in that the Railroad Commissioners are without jurisdiction to hear the petition and to make final findings, conclusions, and order; that the said law violates the Constitution of the United States, Art. 14, being the due process of law clause; that it violates the constitution which provides that no state shall pass or enforce a law which denies to any person the equal protection of the law. That it violates § 13 of the Constitution of the State of North Dakota, that being the due process of law clause. That it violates § 14, which provides that property shall not be taken for public use without just compensation. This necessitates an examination of the law under which the railroad companies operate. Section 4777, as amended by chap. 185, of the Laws of 1917, reads as follows:

"In all cases where any line of railroad shall parallel or terminate within one-half mile of any common point, cross or intersect any other line of railroad at grade in this state, it shall be the duty of each of the railroad companies owning or operating such parallel or intersecting railroad lines to provide at such parallel or crossing or intersection, suitable and sufficient transfer facilities, such as waiting rooms, and 'Y's' or other tracks and connections for transferring cars and traffic of all kinds and classes or cars from one such line of railroad to another, and to maintain the same and afford equal and reasonable facilities for the exchange of cars and traffic between the respective lines. The expense of constructing and maintaining such transfer facilities to be borne equally by each of such railroad companies, or in such proportions as they may agree upon, or as may be determined by the board of railroad commissioners, on joint hearing."

Section 4779 provides that in case a railroad company refuses to comply with § 4777, a hearing shall be had, etc. Section 592 provides "The Commission shall have power and authority to regulate time schedules on branch lines of railroad companies and compel train connections of competing lines at junction points whenever possible." This statute clearly gives the Railroad Commissioners authority to act.

Appellants contend that the Interstate Commerce Act as amended by the Transportation Act of 1920, is so marked and radical that the previous decisions do not, and cannot, control the questions therein involved.

There are two recent cases holding in effect that the 1920 Transportation Act gives to the Interstate Commerce Commission exclusive control over all commerce. First: The case of People ex rel. New York C. R. Co. v. Public Serv. Commission, 195 App. Div. 426, 187 N. Y. Supp. 24, reversed in 233 N. Y. 113, 22 A.L.R. 1073, 135 N. E. 194. This case, however, was decided first upon the ground that the statute law of New York had been so amended that the Public Service Commission had no authority to make physical connection. Before the passage of the Transportation Act, the Appellate Court of New York had held: "that the Public Service Commission, under the language as amended the section, had no authority to act, citing, People ex rel. New York C. R. Co. v. Public Serv. Commission, 177 App. Div. 208,

P.U.R.1917D, 230, 163 N. Y. Supp. 777, affirmed in 223 N. Y. 582, 119 N. E. 1070."

In the case of Lake Erie, A. & W. Road Co. v. Public Utilities Commission, 109 Ohio St. 103, 141 N. E. 847, it is stated:

"The Court of Appeals of New York has recognized the exclusive character of this jurisdiction in the case of People of State of New York ex rel. New York C. R. Co. v. Public Serv. Commission, 233 N. Y. 113, 22 A.L.R. 1073, 135 N. E. 195, in which it is held . . . that both of the railroads in question being engaged in interstate and intrastate commerce, the relief sought could be granted only by the federal Interstate Commerce Commission, in compliance with the interstate commerce act, § 3, ¶ 3, as amended by the Transportation Act of 1920."

In the New York case the authority of the Public Service Commission was taken away by the State Statute.

In the Ohio case, the petitions had been made first to the Interstate Commerce Commission and the court held that since the Interstate Commerce Commission first acquired jurisdiction, the jurisdiction so acquired was exclusive.

In the case of Pennsylvania R. Co. v. Public Utilities Commission, 109 Ohio St. 69, 141 N. E. 839, the same court holds:

"Paragraph 9, § 1, of the Interstate Commerce Act, as amended by the Transportation Act of February 28, 1920, relating to a switch connection with a private side track for one tendering interstate traffic for transportation, does not deprive the Public Utilities Commission of Ohio of jurisdiction in matters relating to purely intrastate traffic, where interstate or foreign commerce is not affected."

In this case the court says:

"After hearing the testimony, the Public Utilities Commission, upon full consideration, found 'that the construction and maintenance of said switch track is reasonably required and necessary to enable the defendant to provide and maintain an adequate and efficient intrastate transportation service in the state of Ohio,' and, while the public necessity of such a switch might be questioned, the commission having thus found, we cannot say, in the light of the discretion that must necessarily be vested in such a commission, that the order is so manifestly

against the weight of the evidence as to warrant us in disturbing the same."

In the case of Midland Valley R. Co. v. State, 107 Okla. 234, 232 Pac. 113, the Supreme Court of Oklahoma holds:

"The 'proviso' to ¶ 17, § 402, of the Act of Congress, known as the Transportation Act of 1920 (41 Stat. at L. 476, chap. 91, U. S. Comp. Stat. § 8563, Fed. Stat. Anno. Supp. 1920, p. 97), and ¶ 22 of said section, reserves to the state the right to exercise its police power to require physical connection between railroads in order to interchange intrastate commerce, and the order of the state corporation commission, as agent of the state, requiring the same, is binding upon the railroads, except when it is inconsistent with some lawful order of the Interstate Commerce Commission, or when it amounts to an unjust discrimination against, or an unreasonable burden upon, interstate commerce."

Appellants claim that the case of Wisconsin, M. & P. R. Co. v. Jacobson, 179 U. S. 297, 45 L. ed. 199, 21 Sup. Ct. Rep. 115, is not authority since the passage of the Transportation Act of 1920. It is very like the case at bar, which deals with intrastate business alone, namely, the transfer of coal at the town of Crosby, in Divide County, for shipment west through the towns of Ambrose, Colgan, Fortuna, and Alkabo. In the case of Wisconsin, M. & P. R. Co. v. Jacobson, supra, there was a lot of timber on one line and very little on the other. In this case, the lignite coal fields are on the Great Northern road at Lignite, Stampede, Larson and Noonan. One is a case of timber, the other a case of coal; both fuel. The case of Wisconsin, M. & P. R. Co. v. Jacobson, supra, holds that the requirement of track connections for the interchange of cars and traffic at railroad intersections, which is made by Minnesota general law, does not constitute an unconstitutional regulation of commerce nor does it take property without due process of law when it is a reasonable exercise of the power of regulation. We are bound by this decision unless, as appellants claim, it has been superseded, or in effect, reversed by the Transportation Act of 1920. It is quoted with approval by Justice Butler: in the case of Norfolk & W. R. Co. v. Public Serv. Commission, 265 U. S. 70, 68 L. ed. 904, 44 Sup. Ct. Rep. 439, decided January 22, 1924, as follows:

"The state, in the exercise of its police power, directly or through an authorized commission, may require railroad carriers to provide reasonably adequate and suitable facilities for the convenience of the communities served by them. . . . The validity of regulatory measures may be challenged on the ground that they transgress the Constitution; and thereupon it becomes the duty of the court, in the light of the facts in the case, to determine whether the regulation is reasonable and valid or essentially unreasonable, arbitrary and void. Wisconsin, M. & P. R. Co. v. Jacobson, 179 U. S. 297, 301, 45 L. ed. 199, 201, 21 Sup. Ct. Rep. 115; Jay Burns Baking Co. v. Bryan, 264 U. S. 504, 68 L. ed. 813, 32 A.L.R. 661, 44 Sup. Ct. Rep. 412. Railroad carriers may be compelled by state legislation to establish stations at proper places for the convenience of their patrons. Minneapolis & St. L. R. Co. v. Minnesota, 193 U. S. 53, 63, 48 L. ed. 614, 618, 24 Sup. Ct. Rep. 396. Any measure promulgated by the state to require a railroad company to provide suitable facilities reasonably necessary for the removal from its premises of freight carried by it for its customers does not create a new duty or impose any unnecessary burden."

That Congress in the Transportation Act did not attempt to regulate intrastate commerce except as it affected interstate commerce clearly decided by Justice Van Devanter in the recent case of Texas v. Eastern Texas R. Co. 258 U. S. 217, 66 L. ed. 572, 42 Sup. Ct. Rep. 281, in which he explains the relation between interstate and intrastate commerce, the authority of Congress and of the states in relation thereto, as follows:

"If paragraphs 18, 19 and 20 be construed as authorizing the Commission to deal with the abandonment of such a road as to intrastate as well as interstate and foreign commerce, a serious question of their constitutional validity will be unavoidable. If they be given a more restricted construction, their validity will be undoubted. Of such a situation this court has said: 'Where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter.' United States ex rel. Atty. Gen. v. Delaware & H. Co. 213 U. S. 366, 407, 410, 53 L. ed. 836, 848, 849, 29 Sup. Ct. Rep. 527. . . . In the Transportation Act, these paragraphs are amendments of the Interstate Commerce Act, and are so

styled. They contain some broad language, but do not plainly or certainly show that they are intended to provide for the complete abandonment of a road like the one we have described. Only by putting a liberal interpretation on general terms can they be said to go so far. Being amendments of the Interstate Commerce Act, they are to be read in connection with it and with other amendments of it. As a whole, these acts show that what is intended is to regulate interstate and foreign commerce, and to affect intrastate commerce only as that may be incidental to the effective regulation and protection of commerce of the other class. *They contain many manifestations of a continuing purpose to refrain from any regulation of intrastate commerce, save such as is involved in the rightful exertion of the power* of Congress over interstate and foreign commerce. Minnesota Rate Cases (Simpson v. Shepard) 230 U. S. 352, 418, 57 L. ed. 1511, 1549, 48 L.R.A.(N.S.) 1151, 33 Sup. Ct. Rep. 729, Ann. Cas. 1916A, 18; Railroad Commission v. Chicago, B. & Q. R. Co. 257 U. S. 563, 66 L. ed. 371, 22 A.L.R. 1086, 42 Sup. Ct. Rep. 232. And had there been a purpose here to depart from the accustomed path, and to deal with intrastate commerce as such, independently of any effect on interstate and foreign commerce, it is but reasonable to believe that that purpose would have been very plainly declared. This was not done. These considerations persuade us that the paragraphs in question should be interpreted and read as not clothing the Commission with any authority over the discontinuance of the purely intrastate business of a road whose situation and ownership, as here, are such that interstate and foreign commerce will not be burdened or affected by a continuance of that business."

In the case of Western & A. R. Co. v. Georgia Pub. Serv. Commission, 267 U. S. 493, 69 L. ed. 753, 45 Sup. Ct. Rep. 409, Chief Justice Taft said:

"It is said that the requirement of the continuance of the service deprived the company of its property without due process of law, in violation of the 14th Amendment, because the service rendered by the sidetrack was much greater in out-of-pocket cost than the compensation. This cannot be sustained. The service has been rendered for years. It was a voluntary arrangement, and under its statutory powers (Georgia Code 1910, § 2664) was made irrevocable by the Public

Service Commission under Rule 14, except by consent of the commission. The spur track was for a public purpose. Union Lime Co. v. Chicago & N. W. R. Co. 233 U. S. 211, 58 L. ed. 924, 34 Sup. Ct. Rep. 522. The requirement that such a service should not be discontinued without notice and hearing was clearly within the police power of the state. Chicago & N. W. R. Co. v. Ochs, 249 U. S. 416, 63 L. ed. 679, P.U.R. 1919D, 498, 39 Sup. Ct. Rep. 343; Lake Erie & W. R. Co. v. State Public Utilities Commission, 249 U. S. 422, 63 L. ed. 684, P.U.R.1919D, 459, 39 Sup. Ct. Rep. 345; Railroad Commission v. Louisville & N. R. Co. 148 Ga. 442, 96 S. E. 855. Even if the cost of the switching is more than what is received for it, we cannot determine on any showing made by the company that the switching does not work a benefit in the increased business that the company gets or may get by reason of the added facilities furnished by the switching. The switch is a small part of the whole railway, and the mere fact that the switching and sidetrack may not be profitable by itself cannot be held to be a confiscation of property, even if it involves a loss. See Ft. Smith Light & Traction Co. v. Bourland, decided March 2, 1925, 267 U. S. 330, 69 L. ed. 631, 45 Sup. Ct. Rep. 249, decided March 2, 1925.

"It seems to be the contention of the company that since 85 per cent of the business done on the sidetrack is interstate commerce, the power to order its establishment or abandonment is vested in the Interstate Commerce Commission and that the state commission is without authority in the premises. Such a claim is in the teeth of the Transportation Act of February 28, 1920, 41 Stat. at L. 456, chap. 91, § 402, ¶ 22, Comp. Stat. § 8563, Fed. Stat. Anno. Supp. 1920, p. 96, which provides that the authority of the commission conferred by § 402 over the extension or abandonment of interstate railway lines shall not extend to the construction of spur industrial or side tracks. See Railroad Commission v. Southern P. Co. 264 U. S. 331, 345, 68 L. ed. 713, 718, 44 Sup. Ct. Rep. 376."

Chief Justice Taft cites Railroad Commission v. Southern P. Co. 264 U. S. 331, 68 L. ed. 713, 44 Sup. Ct. Rep. 376, the opinion having been written by him, and in which he says:

"It is argued that ¶¶ 18 to 21, of § 402, refer only to extensions of a line of railroad having the purpose to include new territory to be served by the interstate carrier, and do not refer to an extension of

new main track for the mere purpose of rearranging terminals within the same city. We do not think the language of ¶¶ 18 to 21 can be properly so limited. We are confirmed in this by paragraph No. 22 which immediately follows:

" 'The authority of the commission conferred by ¶¶ 18 to 21, both inclusive, shall not extend to the construction or abandonment of spur, industrial, team, switching or side tracks, located or to be located wholly within one state, or of street, suburban, or interurban electric railways which are not operated as a part or parts of a general steam railroad system of transportation.'

"This is a palpable distinction between the main tracks of an interstate carrier, and its spur, industrial, switching, or side tracks, and shows the legislative intention to retain any substantial change in the main tracks within the control of the Interstate Commerce Commission. It may well be that a mere relocation of a main track of an interstate carrier which does not involve a real addition to, or abandonment of, main tracks and terminals, or a substantial change in destination, does not come within ¶¶ 18 to 21. One might, too, readily conceive of railroad crossings or connections of interstate carriers in which the exercise by a state commission of the power to direct the construction of merely local union stations or terminals without extensions of main tracks and substantial capital outlay should be regarded as an ordinary exercise of the police power of the state for the public convenience, and would not trench upon the power and supervision of the Interstate Commerce Commission in securing proper regulation of an interchange of interstate traffic or passengers. Only a lawful order of the Interstate Commerce Commission would raise a question of the power of state commission in such cases, as the proviso of ¶ 17, § 402, of the Transportation Act, shows:

" 'That nothing in this act shall impair or affect the right of a state in the exercise of its police power, to require just and reasonable freight and passenger service for intrastate business, except in so far as such requirement is inconsistent with any lawful order of the Commission made under the provisions of this act.' "

Counsel relies upon the case of Washington ex rel. Oregon R. & Nav. Co. v. Fairchild, 224 U. S. 510, 56 L. ed. 863, 32 Sup. Ct. Rep. 535, but this case says: "Since the decision in Wisconsin, M. & P. R.

Co. v. Jacobson, 179 U. S. 287, 45 L. ed. 194, 21 Sup. Ct. Rep. 115, there can be no doubt of the power of a state, acting through an administrative body, to require railroad companies to make track connections. . . . If the order involves the use of property needed in the discharge of those duties which the carrier is bound to perform, then, upon proof of the necessity, the order will be granted, even though 'the furnishing of such necessary facilities may occasion an incidental pecuniary loss.'" This case simply holds that if as a matter of law the order on the facts proved was so unreasonable as to amount to the taking of property without due process of law, the order was void.

It is quite clear from the decisions of Chief Justice Taft, and Justice Van Devanter, that the Transportation Act of 1920 does not in any way interfere with the police power of the state in the regulation of intrastate traffic, except in case such regulation is an unreasonable burden upon interstate commerce, such as would amount to the taking of property without due process of law. Under the decisions quoted, that is the only question remaining in this case. Would the building of the side track at Crosby, North Dakota, be such an unreasonable regulation as to burden interstate commerce, or to amount to the taking of property without due process of law? There is no evidence in this case upon which this court can arrive at that conclusion. The Railroad Commissioners heard the testimony and granted the order requiring the building of the side track as prayed for. The two branch lines at Crosby are only four hundred feet apart and the land is practically level. There is a large territory praying to be supplied with fuel during the long winter months, and it seems that the police power of the state might well be invoked to relieve the distress occasioned by lack of fuel by granting the relief prayed for. We have examined the evidence taken at the hearing and it is sufficient to sustain the findings of the Railroad Commissioners, and the findings, and the judgment of the district court, which is in all things affirmed.

CHRISTIANSON, Ch. J., and JOHNSON, BIRDZELL, and NUESSLE, JJ., concur.