

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00383-CV

**SAN MIGUEL ELECTRIC COOPERATIVE, INC.,**
Appellant

v.

Lee Franklin **LIVELY**, Arthur Wayne Swaim, Robert Murray Swaim, Bobbie Swaim, Rodney and Bobbie Swaim Family Limited Partnership & Shorty Investments, Ltd.,
Appellees

From the 156th Judicial District Court, McMullen County, Texas
Trial Court No. M-22-0027-CV-B
Honorable Janna K. Whatley, Judge Presiding

Opinion by:     Velia J. Meza, Justice

Sitting:          Lori I. Valenzuela, Justice
                  Adrian A. Spears II, Justice
                  Velia J. Meza, Justice

Delivered and Filed: October 22, 2025

REVERSED AND RENDERED IN PART, REVERSED AND REMANDED IN PART

San Miguel Electric Cooperative, Inc.[1] appeals an order granting summary judgment and declaring that a deed reservation of "all coal" did not include lignite. Because the ruling runs counter to the plain meaning, we reverse the trial court's order and render judgment that the reservation of "all coal" included lignite.

---

[1] We will refer to San Miguel Electric Coopertive, Inc. as "San Miguel."

## BACKGROUND

On June 9, 1931, the twelve heirs of R. S. and Minerva Franklin executed a deed to partition the historic Franklin Ranch. The deed divided the property into various tracts, each subject to an express reservation of "all Coal and Kaolin or Clay Products on or under" said lands. Instead of being partitioned, an undivided 1/12 interest in the reservation was conveyed to each of the twelve heirs.

Over time—through either outright purchases or leases—San Miguel acquired 68.5% of the interest to "all coal" under the reservation. On March 8, 2021, San Miguel submitted a coal mining operations permit application to the Texas Railroad Commission. In this application, San Miguel declared its intent to strip mine the Franklin Ranch for lignite. Importantly, San Miguel asserted that its interest to the lignite under the Franklin Ranch stemmed from the 1931 deed's reservation.

Lee Franklin Lively, Arthur Wayne Swaim, Robert Murray Swaim, Bobbie Swaim, Rodney and Bobbie Swaim Family Limited Partnership & Shorty Investments, Ltd.[2]—who are the successors in title to certain tracts of the historic Franklin Ranch—filed suit against San Miguel. The Swaims asserted a declaratory action seeking to declare that "all coal" within the 1931 reservation did not include lignite. San Miguel filed an opposing mirror-image declaratory counterclaim. Through competing motions, both parties moved for summary judgments on this issue. On August 10, 2023, the trial court granted the Swaims' competing summary judgment motion and declared that the 1931 deed did not expressly include lignite. Subsequently, the trial court sua sponte announced it was reconsidering summary judgment. San Miguel supplemented

_____

[2] Collectively referred to as the "Swaims."

its response to the Swaims' motion for summary judgment. The Swaims objected and requested the trial court strike San Miguel's supplemental response.

On May 16, 2024, the trial court entered an amended order on the competing motions for summary judgment again finding in favor of the Swaims, however, declaring this time that the 1931 deed did not reserve any rights to lignite. The trial court also struck San Miguel's supplemental response.

San Miguel petitioned this court for permissive appeal, which we granted, and this appeal followed.

## DISCUSSION

San Miguel challenges the trial court's order declaring that the reservation of "all coal" did not include any rights to lignite. San Miguel also argues that the trial court erred in striking its supplemental summary judgment response.

1.  Scope of Permissive Appeals

Permissive appeals of interlocutory orders are governed by Section 51.014 of the Texas Civil Practice and Remedies Code, which provides:

> [A] trial court in a civil action may, by written order, permit an appeal from an *order* that is not otherwise appealable if: (1) the *order* to be appealed involves a controlling question of law as to which there is a substantial ground for difference of opinion; and (2) an immediate appeal from the *order* may materially advance the ultimate termination of litigation.

TEX. CIV. PRAC. & REM. CODE § 51.014(d) (emphasis added). While "a controlling legal issue is essential to securing a permissive appeal, . . . it is the *order* . . . that is on appeal." *Elephant Ins. Co., LLC v. Kenyon*, 644 S.W.3d 137, 147 (Tex. 2022). As such, upon accepting a permissive appeal, appellate courts should address "all fairly included subsidiary issues and ancillary issues pertinent to resolving the controlling legal issue" within the order. *Oxy USA WTP LP v. Bringas*, 702 S.W.3d 647, 654 (Tex. App.—Houston [1st Dist.] 2024, pet. denied) (internal quotation marks

omitted). This is because, "[i]n the context of a permissive interlocutory appeal, giving the parties half a loaf is not better than giving them nothing; it is worse than nothing." *Elephant Ins. Co., LLC*, 644 S.W.3d at 147.

## 2. Standard of Review

A trial court's grant of summary judgment is reviewed de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). This same standard applies even when we are faced with competing motions for summary judgment on a declaratory judgment action. *Schuhardt Consulting Profit Sharing Plan v. Double Knobs Mountain Ranch, Inc.*, 468 S.W.3d 557, 565 (Tex. App.—San Antonio 2014, pet. denied) (citations omitted). In our de novo review of these competing motions, we must consider the "summary judgment evidence presented by both sides, determine[] all questions presented, and if [we] determine[] that the trial court erred, render[] the judgment the trial court should have rendered." *Valence Operating Co.*, 164 S.W.3d at 661.

## 3. Construction of the 1931 Deed

In its first issue, San Miguel contends that the trial court erred by granting the Swaims' competing motion for summary judgment and declaring that the 1931 reservation of "all coal" did not include any rights to lignite. We agree.

### 3.1 Deed Construction Principles

Construing an unambiguous deed is a question of law which we review de novo. *Anadarko Petroleum Corp. v. Thompson*, 94 S.W.3d 550, 554 (Tex. 2002). In interpreting a deed, our "primary duty is to ascertain the parties' intent as expressed within the [deed]'s four corners." *Id.*; *see also Van Dyke v. Navigator Group*, 668 S.W.3d 353, 361 (Tex. 2023) (holding that courts determine the intent of the parties in a deed objectively by giving terms their fair meaning). This is the case because "[r]ecording deeds and similar instruments is purposefully a public enterprise designed to elicit public reliance." *Van Dyke*, 668 S.W.3d at 361. Since the meaning of deeds

matters to the public at large, there is considerable importance in the "consistent and stable judicial construction of terms used in deeds." *Id.*

When interpreting deeds, we adopt a term's ordinary meaning, unless otherwise defined. *Id.* at 359. However, "[t]he meaning of an unamended [deed] . . . is unaffected by the passage of time, linguistic developments, or the evolution of usage." *Id.* at 360. Thus, a term's ordinary meaning carries forward with time and remains the same as when the deed was recorded. *Id.* As such, we are tasked with "determin[ing], objectively, what an ordinary person using those words under the circumstances in which they are used would understand them to mean." *URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 764 (Tex. 2018). Only if after "applying all pertinent construction principles, a [deed]'s language remains susceptible to two or more reasonable interpretations," will we consider the deed ambiguous as a matter of law. *Endeavor Energy Res., L.P. v. Energen Res. Corp.*, 615 S.W.3d 144, 148 (Tex. 2020) (internal quotation marks omitted).

3.2   <u>The Ordinary Meaning of "All Coal"</u>

The parties agree, as do we, that the deed is unambiguous; that said, they argue differing interpretations of the term "all coal." While San Miguel argues that the 1931 reservation of "all coal" included the rights to lignite, the Swaims argue that it did not. Although the parties attached contemporary deeds and leases from the region as evidence to their competing motions, our analysis begins within the confines of the four corners of the deed. *Storm Associates, Inc. v. Texaco, Inc.*, 645 S.W.2d 579, 585 (Tex. App.—San Antonio 1982), *aff'd sub nom. Friedman v. Texaco, Inc.*, 691 S.W.2d 586 (Tex. 1985).

The 1931 reservation states, in full:

That all Coal and Kaolin or Clay Products on or under said lands or any of them shall be reserved from this partition, and shall continue to be held and owned by said twelve heirs in common and in undivided interest as now, to them and each of them, their heirs and assigns, share and share alike.

Under the *Acker* rule, a severance of undefined minerals creates an assumption that two distinct and separate estates are created: (1) the surface estate and (2) the mineral estate. *Acker v. Guinn*, 464 S.W.2d 348, 352 (Tex. 1971). The dominant mineral estate is ordinarily thought to be entitled to extract its valuable minerals through means which will not destroy or substantially impair the utility of the surface estate. *Id.*

In applying this rule to interpret mineral reservations that did not expressly reserve lignite, iron, or coal, the supreme court has held that such minerals belong to the surface, rather than the mineral estate as a matter of law. *See Acker*, 464 S.W.2d at 352–53 (holding that a conveyance of "oil, gas, and other minerals" did not include iron ore); *see also Reed v. Wylie*, 597 S.W.2d 743, 749 (Tex. 1980) (interpreting a reservation of "oil, gas and other minerals" to not include lignite and coal). However, this presumption applies only when the mineral is undefined. *See Schwarz v. State*, 703 S.W.2d 187, 189 (Tex. 1986). "If there is an express conveyance of a specific substance," as is the case here, "we are not bound to follow the *Acker* and *Reed* presumption." *Id.*

Unbound by *Acker's* surface destruction test, we ascertain the objective intent of the parties by giving the term "all coal" its fair meaning. To accomplish this, "we typically look first to their dictionary definitions and then consider the term's usage in other statutes, court decisions, and similar authorities." *Pharr-San Juan-Alamo Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self Ins. Fund*, 642 S.W.3d 466, 474 (Tex. 2022) (internal quotation marks omitted).

The plain meaning of "all" is "[t]he entire or unabated amount or quantity of; the whole extent, substance, or compass of; the whole." *All*, OXFORD ENGLISH DICTIONARY (1st ed. 1913). "Coal" is defined as:

> [a] mineral, solid, hard, opaque, black or blackish, found in seams or strata in the earth, and largely used as fuel; it consists of carbonized vegetable matter deposited

> in former epochs of the world's history. According to the degree of carbonization, coal is divided into three principal kinds, *anthracite* or *glance coal*, *black* or *bituminous coal*, and *brown coal* or *lignite* in each of which again various qualities are distinguished.

*Coal*, OXFORD ENGLISH DICTIONARY (1st ed. 1913) (emphasis in original). This definition of "coal" has only slightly changed over time. In fact, in examining the modern definition of "coal," lignite is still listed as a "chief variet[y] of coal." *Coal*, OXFORD ENGLISH DICTIONARY, https://www.oed.com/dictionary/coal_n?hide-all-quotations=true#9222845 (last visited Sept. 17, 2025).

Contemporary statutes do not define the term "coal." Additionally, the usage is inconsistent.[3] Accordingly, we turn to judicial interpretations, where courts have either adopted the dictionary definition of "coal" or used the term interchangeably with lignite. *Cannel Coal Co. v. Luna*, 144 S.W. 721, 723 (Tex. App.—San Antonio 1912, writ dism'd w.o.j.) (defining cannel coal as "a distinct kind of coal as contradistinguished from anthracite, lignite, or other kinds of coal."); *Falkenburg v. Laucks*, 248 P. 413, 414 (Wash. 1926) (stating that "[t]he coal at Seattle used in experimentation was lignite coal," whereas the coal at Denver "was bituminous."); *River Rouge Minerals, Inc. v. Energy Res. of Minn.*, 331 So. 2d 878, 879 (La. Ct. App. 1976) (using the term "coal" and "lignite coal" interchangeably when referring to lignite); *Milhollan v. Great N. Ry. Co.*, 204 N.W. 994, 995 (N.D. 1925) (employing the word "coal" when referring to lignite).

We hold that the ordinary meaning of "all coal" included lignite at the time the 1931 deed was executed. Accordingly, we sustain San Miguel's first issue.

---

[3] *Compare* Act of April 30, 1907, 30th Leg., R.S., ch. 178, § 1, 1907 Tex. Gen. Laws 331 (regulating Texas mine shafts and openings "projected for the purpose of mining coal *of all kinds*," presumably including anthracite, bituminous, and lignite coal); *with* Act of March 16, 1917, 35th Leg. R.S., ch. 83, § 10, 1917 Tex. Gen. Laws 161 (listing—without defining—coal and lignite as separate minerals).

4.   The Trial Court's Evidentiary Rulings

In its second and third issues, San Miguel argues that the trial court erred in striking its supplemental summary judgment response, as well as additional summary judgment evidence. Because the resolution of such evidentiary rulings would not change the disposition of this appeal, we need not address these issues. *See* TEX. R. APP. P. 47.1.

## CONCLUSION

For the foregoing reasons, we hold that the 1931 deed's reservation of "all coal" included lignite. We therefore reverse the trial court's grant of summary judgment and render judgment in favor of San Miguel.

Velia J. Meza, Justice